IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-1670-WJM-NRN

PAMELA CRISS,

    Plaintiff,

v.

UNITED AIRLINES, INC., and
JOHN DOES 1–4,

    Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Pamela Criss brings this action against Defendant United Airlines, Inc., ("United") alleging that, as a result of United's negligence, Criss was injured when she slipped and fell on a jetway bridge as she deboarded her flight at Denver International Airport ("DIA"). (ECF No. 4 ¶¶ 7–10, 19–26.) Before the Court is United's Motion for Summary Judgment ("Motion"). (ECF No. 52.) Criss responded to the Motion ("Response") (ECF No. 53) and United replied ("Reply") (ECF No. 58). For the reasons set forth below, the Motion is granted.

### I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to the proper disposition of the claim. *Wright v.*

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*, 475 U.S. at 586–587).

## II. BACKGROUND[1]

### A. The Injury

On March 19, 2018, as Criss disembarked from a SkyWest Airlines ("SkyWest") flight and proceeded down the jetway ramp between the aircraft and the DIA terminal, she slipped and fell on the slick, wet carpeted floor.  (ECF No. 52 ¶ 1; ECF No. 53 ¶ 1.) Criss did not see any wet substance on the floor before or after she fell.  (ECF No. 52 ¶ 15.)  When her daughter asked Criss what caused her fall, she said, "wet down there,"

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Facts disputed by the parties are noted as such.

and after Criss fell, her daughter observed water on her flip-flop sandal. (ECF No. 53 ¶ 8, 17.) After her fall, she received medical care at DIA. (ECF No. 53 ¶ 3.)

**B.     The Lease**

The City and County of Denver ("Denver") owns the jetway bridge in which Criss fell, and at the time of the incident, there was a lease between Denver and United (the "Lease") which, among other things, provided for the operation and maintenance of the jetway bridge. (ECF No. 52 ¶ 2.) The Lease differentiates between two types of areas: exclusive use areas and preferential use areas. (*Id.* ¶ 8.)[2] Exclusive use areas are those areas that only United uses, such as office areas. (*Id.*) Preferential use areas are those areas that other airlines can use, including hold rooms, gates, ramp areas, and—as relevant here—jet bridges. (*Id.*)

The Lease provides:

> **4.01 MAINTENANCE OF DEMISED PREMISES**
>
> (A)     [Denver] shall provide services and maintenance in the Demised Premises as indicated in <u>Exhibit E</u>, attached hereto and made a part hereof, and shall bear the cost thereof in consideration for the payment, to be made pursuant to the provisions hereof.

(*Id.* ¶ 6 (emphasis in original).) "Exhibit E" to the Lease denotes that Denver is responsible for the maintenance of the jetway bridges. (*Id.* ¶ 7.)

**C.     Disputed Facts: The Application of Deicer to the Jet Bridge**

United challenges two of Criss's factual assertions, arguing that they are not supported by admissible evidence. (ECF No. 58 at 1–7.) First, Criss asserts that

---

[2] Although Criss denies this paragraph, her explanation shows that she merely wishes to add supplementary facts, not deny United's assertions outright. (ECF No. 53 at 3.)

3

United personnel were aware that the jet bridge had been cleaned of ice melt which accumulated the previous night. (ECF No. 53 ¶ 2.) To support this assertion, Criss points to a document produced by United, which states: "as reported by the passenger, when she stepped off the a/c onto the jet bridge it was slick with a soapy water where they were cleaning the ice melt from last night." (ECF No. 53-1 at 3.)

Having reviewed the document, the Court finds that it only recites what Criss told United personnel *after* her fall and does not support any inference about what United was aware of *before* her fall. Therefore, this document is insufficient to support Criss's assertion that United knew about the dangerous condition of the jetway bridge before her fall. *See Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) (affirming summary judgment because "[j]ury verdicts may not be based on speculation or inadmissible evidence").

Second, Criss asserts that a United employee told her that some form of deicer was applied to the area where she fell. (ECF No. 53 ¶ 9.) United denies this assertion and argues that Criss has not cited any admissible evidence to support it. (ECF No. 58 at 1–2, 6–7.) To support her assertion, Criss points to a section of her own deposition testimony in which she claims that a United employee told her that: (1) United had put deicing fluid on the floor of the jetway bridge; (2) United had failed to put up warning signs around the slippery area; and (3) this "was the cause of the fall." (ECF No. 53-2 at 4–5.)

However, Criss does not identify the individual who made this allegedly inculpatory statement to her. (*See generally* ECF Nos. 53, 53-2.) She does not remember the individual's name. (ECF No. 53-2 at 5.) And when asked to describe the

4

individual, she responds: "Oh gosh. I know that she was—I could not give you any characteristics or hair. I want to say—I know she was more of a Caucasian lady. But I do not know. It's been so long, I cannot tell you how she looked." (*Id.*)

To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury. *See Truck Ins. Exch.*, 360 F.3d at 1216. Evidence need not be submitted "in a form that would be admissible at trial." *Celotex*, 477 U.S. at 324. Nonetheless, "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

Generally, summary judgment "precludes the use of inadmissible hearsay testimony in depositions submitted . . . in opposition to, summary judgment." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (quotation omitted). When an otherwise inadmissible hearsay statement is made by a party-opponent, however, it may be admitted under Federal Rule of Evidence 801(d)(2). In order to qualify as an admission by a party-opponent, Criss must establish that it was made by the party or that the party adopted or authorized it. *Id.*

Here, Criss does not attempt to establish that the hearsay statement at issue falls into one of the hearsay exceptions. And the Court finds no evidence in the record that the declarant was authorized to make statements for United, that her statement was adopted by United, or that her statement was within the scope of her alleged employment relationship with United. Fed. R. Evid. 801(d)(2). Therefore, Criss has failed to show that the hearsay statement would be admissible at trial, and for the purposes of deciding this Motion, the Court does not rely on Criss's assertion that a

5

United employee told her that some form of deicer was applied to the area where she fell.

### III. ANALYSIS

United moves for summary judgment on both claims brought against it by Criss, namely: (1) the claim brought pursuant to the Colorado Premises Liability Act ("CPLA"), Colorado Revised Statutes §§ 13-21-115, *et seq.*; and (2) the negligence claim. (ECF No. 4.)

**A.    CPLA**

The CPLA outlines the respective duties that a landowner owes to trespassers, invitees, and licensees and provides that a breach of those duties may result in liability for damages caused. Colo. Rev Stat. § 13-21-115(3)(c)(I), *et seq.*  As relevant here, for an invitee to prevail on a CPLA claim, she must prove that: (1) a landowner failed to exercise reasonable care; (2) the landowner had actual or constructive knowledge of the danger; (3) proximate cause; and (4) damages. Colo. Rev Stat. § 13-21-115(3)(c)(I); *see Lombard v. Colorado Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 575 (Colo. 2008).

United argues that Criss's CPLA claim fails because United is not a landowner under the CPLA (ECF No. 52 at 6–8) and because United did not have actual or constructive knowledge of the dangerous condition of the jetway bridge (*id.* at 9–10).

   1.    <u>United is a Landowner Under the CPLA</u>

The CPLA defines "landowner" to include: (i) an authorized agent or person in possession of the property;³ and (ii) a person legally responsible for the condition of the

---

³ A person is "in possession of land" when he occupies the land with intent to control it, although not necessarily to the exclusion of all others. *Pierson v. Black Canyon Aggregates,*

6

property or for the activities conducted or circumstances existing on the property.  Colo. Rev Stat. § 13–21–115(1); *see Pierson*, 48 P.3d at 1219.

In *Jordan v. Panorama Orthopedics & Spine Ctr.*, 346 P.3d 1035 (Colo. 2015), the Supreme Court of Colorado held that a lessee in multi-unit office building was not a landowner of common areas, including the sidewalk where a patient fell, because the lease stated that the lessee had "the non-exclusive use" of the common areas, the lessee could not exclude anyone from common areas, and the lessor retained responsibility for the maintenance of the common areas.  *Id.* at 1042.

Here, the Lease states that United has "preferential use" of the jetway bridges, which means they may be used by other airlines under certain circumstances.  (ECF No. 53 ¶¶ 15–16.)  The Lease also provides that Denver retains responsibility for maintenance and custodial services on the jetway bridges.  (ECF No. 52 ¶ 11.) Additionally, Denver Senior Airline Affairs Manager Susan Moore testified during her deposition that at no time has United ever performed routine custodial duties on the jetway bridges.  (*Id.* ¶ 13.)  Thus, United argues, it is not a landowner of the jetway bridge because, like the lessee in *Jordan*, it does not have exclusive use of the jetway bridge and the lessor, Denver, retains responsibility for its maintenance.  (ECF No. 52 at 8.)

The Court is not persuaded that *Jordan* is on point.  In *Jordan*, the court's holding turned on the fact that the tenant could not "exclude *anyone* from common areas," because the court found that  "possession necessarily connotes the right to exclude at least some others."  *Jordan*, 346 P.3d at 1042 (emphasis added).  But here, United

---

*Inc.*, 48 P.3d 1215, 1219 (Colo. 2002).

7

clearly has the right to exclude at least some others from the jetway bridges. For example, United can exclude non-ticketed passengers.

Further, the Court is not persuaded that Denver's retention of the responsibility for maintenance and custodial services on the bridges precludes United from being considered a landowner. *See Pierson*, 48 P.3d at 1217 (finding that a contractor was a landowner even though the lessee that had hired the contractor retained the responsibility to repair fences, the right to erect gates, and the right to inspect the premises and make safety improvements to the land). Thus, the Court finds that United's Lease provided sufficient possessory interest in the jetway bridge for United to qualify as a landowner under CLRA.

2. Foreseeability

Next, United argues that Criss has failed to raise a genuine issue of material fact on the issue of foreseeability, *i.e.*, whether United had actual or constructive knowledge of the dangerous condition that allegedly caused Criss's fall. (ECF No. 52 at 9–10.)

To hold United liable under the CPLA, Criss must show that United "actually knew or should have known" of the potential danger to invitees. Colo. Rev Stat. § 13-21-115(3)(c). This standard may be satisfied by actual or constructive knowledge. *Lombard*, 187 P.3d at 568. Constructive knowledge is "knowledge that one exercising reasonable diligence should have." *Clemmons v. FC Stapleton II, LLC*, 485 F. App'x 904, 908 (10th Cir. 2012).

United argues that there is no factual support for Criss's assertion that United had knowledge of the allegedly dangerous condition of the jetway bridge before Criss's fall. (ECF No. 52 at 10.) Thus, United argues, no reasonable jury could rule in Criss's favor on this element of her CPLA claim. (*Id.*)

8

Criss argues that United had constructive knowledge of the dangerous condition because "defendant's employees . . . had been up and down that jetway all that day and days prior before Plaintiff fell." (ECF No. 53 at 12.) She argues that one of the employees should have noticed the slippery carpet and done something to reduce the danger it posed. (*Id.*)

But the key fact here, which Criss simply ignores, is that the accident happened while the jetway bridge was being used by *SkyWest*, not United. And there are no facts in the record showing that any United employee was in the jetway prior to Criss's accident, or that United employees are even allowed in the jetway when it is being used by another airline. So, while it might be reasonable to infer that SkyWest employees should have known about the allegedly dangerous condition of the jet bridge, the same does not hold for United employees.

Because Criss has failed to produce any admissible evidence that could prove an essential element of her claim—that United had constructive knowledge of the condition that caused her injury—the Court grants the Motion regarding Cross's CPLA claim.

**B.    Negligence**

Because United is a landowner under the CPLA, the CPLA "provides an exclusive remedy against [United] for injuries which occur as a result of conditions, activities, or circumstances on [United's] property." *Reid v. Berkowitz*, 370 P.3d 644, 647 (Colo. 2016). Therefore, Criss may not proceed against United on her alternative claim of common law negligence.

But even if the Court had determined that the CPLA did not apply here, Criss's negligence claim would still fail as a matter of law. To prevail on a claim of negligence, Criss must show that: (1) United owed her a legal duty of care; (2) United breached that

9

duty; (3) Criss suffered injury; and (4) the cause of that injury was the United's conduct. *See Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005).  The existence of a legal duty of care is a question of law.  *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980).

United argues that the undisputed facts show that it did not owe a duty of care to Criss.  (ECF No. 52 at 10–13.)  The Lease provides that Denver, not United, was responsible for maintaining the jetway bridge.  (*Id.* at 3.)  Further, no admissible evidence has been produced indicating that United was responsible for creating the dangerous condition of the jetway bridge.  (*Id.* at 13.)  And at the time of the accident the jetway bridge was being used by SkyWest, not United.  (ECF No. 53-1 at 2.)  Thus, United argues, it had no legal duty to Criss.  (ECF No. 52 at 13 (citing *Woods v. Delgar Ltd.*, 226 P.3d 1178, 1181 (Colo. App. 2009) (holding that lessee did not have duty to plaintiff because lessee did not control, maintain, or construct the awning of the building which was the cause of plaintiff's injury)).)

In her Response, Criss does not engage with United's arguments, instead she makes the conclusory assertion that "[the Lease] creates a duty owed by Defendant to the customers of United and DIA such as the Plaintiff."  (ECF No. 53 at 14.)  Criss cites no caselaw and offers little (if any) application of law to fact, making her argument unpersuasive.  *See Meyer v. Bd. of Cty. Comm'rs of Harper Cty., Okla.*, 482 F.3d 1232, 1242 (10th Cir. 2007) ("[W]e are not charged with making the parties' arguments for them.").

The Court is persuaded that, on the facts of record before it, United owed no duty to Criss because the Lease provides that Denver is responsible for maintenance of the

10

jetway bridge, there is no evidence showing that United created the dangerous condition that caused Criss's injury, and at the time of the accident the jetway bridge was being used by SkyWest, not United.  Thus, the Court finds that even if the CPLA does not apply here, Criss's negligence claim fails as a matter of law, and the Court grants summary judgment in favor of United on Criss's negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant United Airlines, Inc.'s Motion for Summary Judgment (ECF No. 52) is GRANTED;
2. Plaintiff Pamela Criss's claims and this action are DISMISSED;
3. The Clerk shall enter judgment in favor of Defendant United Airlines, Inc., and against Plaintiff Pamela Criss and shall terminate this case; and
4. Defendant United Airlines, Inc., shall have its costs, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 7th day of March, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge